59 F.3d 167
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
DARRELL N. BACKUS, Defendant-Appellant.
 No. 94-5780.
 United States Court of Appeals, Fourth Circuit.
 Submitted May 18, 1995.
Decided June 20, 1995.
 
 Henry E. Wood, III, WOOD & ASSOCIATES, Charleston, West Virginia, for Appellant.
 Rebecca A. Betts, United States Attorney, Philip J. Combs, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 Before NIEMEYER and WILLIAMS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Darrell N. Backus pled guilty to being a felon in possession of a firearm, 18 U.S.C.A. Sec. 922(g)(1) (West Supp.1995), and was sentenced to a term of 46 months. Backus appeals his sentence on two grounds. First, he contests the district court's finding that he possessed three firearms, which added one offense level to his sentence calculation. United States Sentencing Commission, Guidelines Manual, Sec. 2K2.1(b)(1)(A) (Nov.1993). Second, he challenges the court's finding that he obstructed justice by threatening the confidential informant and the arresting officers, which resulted in a two-level increase. USSG Sec. 3C1.1. We find no clear error, and affirm.[1]
 
 
 2
 In December 1993, Backus, a convicted felon, offered to sell a Remington rifle to Bobby Hudnall, who had previously seen the rifle at Backus' house. Hudnall had recently bought a pistol from Backus, which turned out to be stolen. Hudnall agreed to buy the rifle and met with Backus a few days later wearing a transmitter and followed by two West Virginia state police officers and two federal agents. Backus and a friend got in Hudnall's car to go to Backus' house. While en route, Backus became suspicious that he was being targeted for arrest. He told Hudnall that state police officer Arch Nissel (one of the surveilling officers) was trying to arrest Hudnall, accused Hudnall of collaborating with Nissel, and eventually produced a Ruger pistol which he put to Hudnall's head. After some time, the friend succeeded in taking the pistol from Backus. The officers then signalled for Hudnall to stop, and arrested Backus. He had been drinking, but was coherent. Nissel testified at the sentencing hearing that Backus could have passed a field sobriety test. One to two hours later, when Backus confronted Corporal Nissel at the holding facility, he threatened to kill Nissel and one of the federal agents who was present, as well as their families.
 
 
 3
 The next day, Backus' house was searched.[2] A Marlin .22 caliber rifle was found in the house. At the same time, three firearms were taken from the truck belonging to Backus' father, who was driving away from the house when the state trooper arrived to secure the house in preparation for execution of the search warrant. In the front of the truck was a Remington rifle matching Hudnall's description of the rifle he had agreed to buy from Backus. Behind the front seat was another rifle and a handgun. Backus' father testified at the sentencing hearing that all three guns belonged to him. However, the state trooper who retrieved the guns from the truck testified that Backus' father told him the Remington rifle came from Backus' house.
 
 
 4
 After hearing extensive testimony from most of the participants in these events, the district court determined, over Backus' objection, that Backus had possessed three firearms: the Ruger pistol he was arrested with, the Marlin .22 caliber rifle found in his house, and the Remington rifle found in his father's truck.[3] On appeal, Backus contends that the district court clearly erred in finding that he possessed the Remington rifle. He argues that the government failed to show that he either possessed it or had constructive possession of it by the mere fact that it was in his residence. Backus argues that it may have belonged to a woman who lived with him or to his father. Because the Remington rifle was the gun Backus offered to sell to Hudnall, we believe that the district court did not clearly err in finding by a preponderance of the evidence that Backus possessed the Remington rifle.[4] An enhancement for possession of three firearms was thus correct.
 
 
 5
 With regard to the adjustment for obstruction of justice, Backus maintains that the threat to Hudnall was made while he was intoxicated and before he knew that Hudnall would be a witness against him. He contends that the threats to the state police officer and the federal agent were unrelated to his offense, and did not impede the investigation because he had already been arrested when the threats were made.
 
 
 6
 All these arguments are unconvincing. Guideline section 3C1.1 applies when a defendant impedes or attempts to impede his investigation or his prosecution by threatening a witness. USSG Sec. 3C1.1, comment. (n.3(a)). Moreover, Backus suspected that Hudnall was cooperating with police at the time he threatened Hudnall, and the district court found, based on the testimony of the arresting officers, that Backus was not so intoxicated that his threat was meaningless. Our review of the testimony of the various witnesses at the sentencing hearing reveals that the district court's factual findings are supported by the evidence, and are not clearly erroneous.
 
 
 7
 Accordingly, we affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 We do not find that defense counsel waived review of the firearms issue at the sentencing hearing. The record discloses that the attorney argued that the government's witness (Hudnall) had positively identified only three firearms which he claimed to have seen in Backus' possession, rather than five. Counsel did not agree that Backus had possessed three firearms
 
 
 [2]
 The house in which Backus had been living was owned by his father
 
 
 [3]
 We note a discrepancy between the oral finding and the district court's statement of reasons attached to the judgment and commitment order, which states that Backus possessed the Ruger, the Remington, and a Smith & Wesson .38 caliber revolver. The oral finding is accurate; the Smith & Wesson was one of the firearms which was found behind the seat in Backus' father's truck
 
 
 [4]
 Because of appellate counsel's confusion over which firearms Backus was held responsible for, we point out that, even if Backus shared the house with a woman, the evidence also supported a finding that he had at least constructive possession of the Marlin .22 caliber rifle found in his house. Hudnall testified that Backus obtained firearms from Montana through Kimberly Daniels, who lived with him. This evidence gave rise to "a plausible inference that [Backus] had knowledge of and access to" the Marlin rifle. United States v. Mills, 29 F.3d 545, 549-50 (10th Cir.1994)