**F I L E D**

**UNITED STATES COURT OF APPEALS**

**May 16, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

TOMMY RUIZ,

Defendant-Appellant.

No. 05-6190

(W. D. Oklahoma)

(D.C. No. 04-CR-208-F)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.[**]

---

Tommy Ruiz was convicted after a jury trial of one count of possessing a

firearm after having been convicted of a crime punishable by imprisonment for a

term exceeding one year, a violation of 18 U.S.C. § 922(g)(1). The district court

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

[**]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See FED. R. APP. P. 34(A)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

sentenced him to 92 months' imprisonment, followed by three years' supervised release.

In this appeal, Mr. Ruiz argues that the evidence was insufficient to support the § 922(g)(1) charge. We disagree and therefore affirm his conviction.

## I. BACKGROUND

On August 2, 2004, Sergeant Jim Lilly, an investigator with the Oklahoma County Sheriff's office, attempted to serve an arrest warrant on a fugitive named Tiffany Forester. Sergeant Lilly had received information indicating that Ms. Forester might be found at a house in Oklahoma City where Mr. Ruiz was living. Sergeant Lilly and several other officers arrived at the house around 7:30 or 8:00 p.m. Bonnie Howard, who was Mr. Ruiz's former sister-in-law, answered the door. She told Sergeant Lilly that no one else was there, and she gave him permission to look for the fugitive.

While conducting a protective sweep, Reserve Deputy Jason Ruegge found a locked room in the northeast part of the house. Deputy Ruegge heard voices inside the room, but he could not determine whether they came from a television set or from other people.

According to Sergeant Lilly, Ms. Howard told him that she did not have a key to the locked room and did not have access to it. She added that Mr. Ruiz was the only person with access to the room.

While the officers were continuing the protective sweep, Mr. Ruiz arrived at the house. He gave Sergeant Lilly a key to the locked room, and Sergeant Lilly opened the door. Inside a cabinet above a closet, Sergeant Lilly found the firearm that is the subject of this prosecution—a Glock pistol with .40 caliber ammunition loaded in the magazine. According to Sergeant Lilly, Mr. Ruiz told him that a friend had left the pistol there. Sergeant Lilly responded that he did not intend to arrest Mr. Ruiz, but he did seize the pistol. Officers obtained a latent fingerprint from the pistol, but later discovered that it did not belong to Mr. Ruiz.

Several other witnesses testified at trial about Mr. Ruiz's connection to the pistol. Jeff Reed, a detective with the Oklahoma City Police Department, stated that in the course of investigating a drive-by shooting on the following day (August 3, 2004), he interviewed Mr. Ruiz. Mr. Ruiz told him that officers had seized a Glock .40 caliber pistol and that he had obtained it from an ex-gun dealer in Norman, Oklahoma. Detective Reed interviewed Mr. Ruiz again on September 9, 2004. This time, Mr. Ruiz stated that a friend had obtained the pistol and that the bedroom where it had been found belonged to his father, not him.

Karen Hess, a special agent with the Bureau of Alcohol, Tobacco, and Firearms testified that she interviewed Mr. Ruiz on October 24, 2004, after he had been arrested for this firearm offense. She stated that Mr. Ruiz told her that it was Ms. Howard who had obtained the pistol but that he did not know that Ms. Howard had it. He added that the bedroom where the pistol had been found

belonged to his father. However, Mr. Ruiz said, his father would give him the key when his father went to work.

At trial, Ms. Howard testified in Mr. Ruiz's defense. She told the jury that the room in which the pistol was found belonged to Mr. Ruiz's father and that she, Mr. Ruiz, and Mr. Ruiz's father all had keys to it. She explained that she had obtained the pistol from Andre Williams, the father of her baby. She had put it in the cabinet but did not tell Mr. Ruiz that she had done so. She only told Mr. Ruiz about the pistol as the officers were searching the room.

## II. DISCUSSION

Mr. Ruiz now argues that the evidence is insufficient to support his conviction under 18 U.S.C. § 922(g)(1). He maintains that the evidence raises only a suspicion of guilt.

We engage in de novo review of the sufficiency of the evidence supporting a conviction. United States v. Bowen, 437 F.3d 1009, 1014 (10th Cir. 2006). We consider whether, "taking the evidence–both direct and circumstantial–together with reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find [Mr. Ruiz] guilty beyond a reasonable doubt." United States v. Allen, 235 F.3d 482, 492 (10th Cir. 2000) (internal quotations omitted). "We do not question the jury's credibility determinations or its conclusions about the weight of the evidence."

Id.  "The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.  Instead, the evidence only has to reasonably support the jury's finding of guilt beyond a reasonable doubt."  United States v. Pulido-Jacobo, 377 F.3d 1124, 1129 (10th Cir. 2004) (internal quotation marks and citation omitted).

To prove a violation of § 922(g)(1), the government must establish the following elements beyond a reasonable doubt: (1) that the defendant was previously convicted of a felony; (2) that the defendant thereafter knowingly possessed a firearm or ammunition; and (3) that the possession was in or affecting interstate commerce.  United States. v. Colonna, 360 F.3d 1169, 1178 (10th Cir. 2004).  Here, Mr. Ruiz's has disputed only the second element—knowing possession.

"Possession" under § 922(g)(1) may be actual or constructive.  See United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994).  "[C]onstructive possession exists where the defendant has the power to exercise control or dominion over the item."  United States v. Lopez, 307 F.3d 1207, 1212 (10th Cir. 2004).  In most cases, "[d]ominion, control, and knowledge . . . may be inferred when a defendant has exclusive possession of the premises" where the object is found.  Mills, 29 F.3d at 549.

In cases of joint occupancy, the government "must present evidence to show some connection or nexus between the defendant and the firearm or other contraband." Id. "While caution must be taken that the conviction not be obtained by piling inference on inference, an inference of constructive possession is reasonable if the conclusion flows from logical and probabilistic reasoning." United States v. Lazcano-Villalobos, 175 F.3d 838, 843 (10th Cir. 1999) (internal quotation marks omitted). To sustain a conviction for constructive possession, the government must present "evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon." United States v. Hien Van Tieu, 279 F.3d 917, 922 (10th Cir. 2002) (internal quotation marks omitted); see also Mills, 29 F.3d at 549-50.

Applying these standards, we conclude that the evidence is sufficient to permit the jury to infer that Mr. Ruiz had knowledge and access to the Glock pistol and therefore constructively possessed it. The jury heard evidence that Mr. Ruiz had admitted that he had obtained the pistol from a Norman gun dealer. Although the jury heard contrary statements–both from Ms. Howard and from Mr. Ruiz himself–we may not second-guess its decision about the weight of this evidence. Moreover, even if it did not believe that Mr. Ruiz owned the pistol, it could still reasonably conclude, from testimony about his having a key to the room and knowing where the pistol was located, that he had "knowledge of and access to the weapon." Hien Van Tieu, 279 F.3d at 922.

### III. CONCLUSION

Accordingly, we AFFIRM Mr. Ruiz's conviction.

Entered for the Court,

Robert H. Henry
United States Circuit Judge